NEIL L. SHAPIRO (SBN 051547)
LAW OFFICES OF NEIL L. SHAPIRO
2100 Garden Road, Suite C
Monterey, California 93940
Telephone: (831) 372-3700
Facsimile: (831) 372-3701
nshapiro@nshapiro.com

Attorneys for Plaintiff
PEBBLE BEACH COMPANY

FILED

2008 JUN 12 A 10: 43

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PEBBLE BEACH COMPANY, a California General Partnership,

　　　　Plaintiff,

vs.

GLENN R. CALLAHAN, and Individual,

　　　　Defendant.

C08 02920 HRL

COMPLAINT FOR CANCELLATION OF SERVICE MARK REGISTRATIONS, TRANSFER OF DOMAIN NAME REGISTRATIONS, AND MONETARY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

　　　　Plaintiff Pebble Beach Company ("PBC") complains of defendant Glenn R Callahan ("Callahan") as follows:

**PARTIES**

　　　　1.　　PBC was at all times here relevant and is a general partnership duly organized and existing under and by virtue of the laws of the State of California, and has its principal place of business in the County of Monterey, State of California.

　　　　2.　　Defendant Callahan was at all times here relevant and is a citizen and resident of the County of Monterey, State of California.

## JURISDICTION

3. This Court has jurisdiction over the claims set forth herein pursuant to the provisions of 28 U.S.C. § 1331 because those claims arise under the laws of the United States, specifically the Lanham Act, 15 U.S.C. §§ 1064, 1119 and 1125.

## VENUE AND INTRADISTRICT ASSIGNMENT

4. Venue is proper in this District pursuant to the provisions of 28 U.S.C. §§ 1391(b) and 1400 because a substantial part of the events or omissions giving rise to the claim occurred here, and because defendant may be found here. This action should be assigned to the San Jose Courthouse because the parties are located in, and the claims arose in, the County of Monterey.

## FACTUAL BACKGROUND

5. In 1880, one of PBC's direct predecessors-in-interest acquired substantial real property on the Monterey Peninsula, including land known as the "Del Monte Forest." Commencing in 1919, one of PBC's direct predecessors-in-interest began operating a golf course, called the "Pebble Beach Golf Links" or the "Pebble Beach golf course." PBC and its direct predecessors-in-interest have operated this golf course continuously since 1919. Over time, and due in part to the fame of the Pebble Beach Golf Links, people began referring to the Del Monte Forest as "Pebble Beach."

6. From 1919 until 1977, a direct PBC predecessor-in-interest called itself Del Monte Properties Company ("DMPC"). DMPC controlled access (eventually through four gates) to the Del Monte Forest and gradually sold, for private residences, a portion of the property originally acquired as the Del Monte Forest. PBC continues to control access to the original Forest area, which now includes more than 2,500 privately owned residences.

7. During those same years, DMPC developed additional golf courses in the Del Monte Forest, such that the Del Monte Forest, or "Pebble Beach," became one of the world's premiere golfing venues, with major tournaments held there and with thousands and thousands of annual visitors drawn there by the golf facilities and the reputation developed by "Pebble Beach" and its owner.

8. PBC's direct predecessor-in-interest, DMPC, leased a retail establishment

2

called the Pro Shop, located adjacent to the Pebble Beach Golf Links, to various lessees from at least as early as the 1940s until the late 1970s, when PBC took over direct operation of the shop. DMPC received commissions on sales of items from this shop during the period it was leased. Beginning in the early 1950s the lessee of the Pro Shop began selling caps that were logo'd with the phrase "Pebble Beach." In the late 1950s the lessee began putting the words "Pebble Beach" on bag tags, ball markers, and towels. By late 1968 or early 1969 additional items, including golf bag covers, golf club covers, golf clubs, golf gloves, handbags, golf shirts and sweaters were sold with the "Pebble Beach" logo. In the late 1970s, PBC created its Retail Department, which expanded the range of logo'd merchandise it sold through the Pro Shop to include pants, knickers, belts, ties, vests, scarves, and miscellaneous souvenir items.

9.  In the years following the the creation of PBC's Retail Department, PBC continued to expand the range of logo'd merchandise, and began selling such merchandise from other locations, such as a Company Store, drug store, gas station, a shop for children's clothes, and a designer fashion store. The logo'd items sold through these stores included, among other things, softgoods, foods and beverages, souvenirs, cosmetics, and license plate frames. In addition, for more than half a century PBC has organized events that bear its distinctive name and are associated in the mind of consumers with PBC, including the Pebble Beach Road Races, Pebble Beach Concours d'Elegance, Pebble Beach Equestrian Classics, and Pebble Beach Food & Wine Festival.

10. The mark "Pebble Beach" over the ensuing years has become famous both nationally and world-wide, and for a wide array of goods and services. That trademark is currently registered in at least 35 other countries in North and South America, Europe, Australia and Asia, with registrations in international classes of goods 3, 9, 12, 16, 18, 25, 28, 31, 33, 39, 41 and 42. In addition, PBC sought and received from the United State Patent and Trademark Office ("USPTO) registrations of its "Pebble Beach" trademark with for international classes of goods 3 (registration numbers 1884513 and 2426604), 14 (1738248), 16 (1723688 and 1884513), 18 (1723773 and 1884513), 20 (1723806 and 1884513), 21 (1738373 and 1884513), 24 (1738389), 28 (1791043 and 1884513), 29 (1884513), 30 (1884513), 33 (1884513), 35 (1806360), 39 (1806360), 41 (1806360) and

3

COMPLAINT FOR CANCELLATION OF SERVICE MARK REGISTRATIONS, TRANSFER OF DOMAIN NAME REGISTRATIONS, AND MONETARY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

42 (1724418 and 1806360). The great majority of the USPTO registrations have achieved incontestable status.

11. On or about May 19, 2005, Callahan submitted an application to the USPTO to register the service mark "Pebble Beach Bancorp," representing that he had a bona fide intention to use that mark in commerce for "banking services" in international class 36. On or about March 7, 2006, Callahan submitted to the USPTO an Amendment to Allege Use, in which he claimed that the mark is "now in use in such commerce," and that it was first so used on August 31, 2005. As proof of such use, Callahan submitted a copy of an advertisement published in the Park Record, a newspaper published in Park City, Utah, in which he described "Pebble Beach Bancorp" as "[a] holding company for financial institutions such as banks, trust companies, real estate firms, insurance companies and related organizations," with the address "c/o Glenn Callahan, P.O. Box 1295, Pebble Beach, CA 93953," and with his personal telephone number, (831) 624-1847.

12. On or about September 15, 2006, the mark was approved for registration, and on or about November 11, 2006, Registration No. 3170216 was issued, registering that service mark on the Supplemental Register.

13. PBC is informed and believes that the asserted service mark "Pebble Beach Bancorp" has never been used in commerce, whether as represented to the USPTO by Callahan or otherwise, that there is no "holding company" nor any "financial institutions such as banks, trust companies, real estate firms, insurance companies and related organizations," and that the sole "use" of the mark was the single publication of the referenced advertisement in a newspaper in Park City, Utah.

14. On or about September 30, 2005, Callahan submitted an application to the USPTO to register the service mark "Pebble Beach Festivals," representing that he had a bona fide intention to use that mark in commerce for "film exhibitions, art displays and music concerts" in international class 41. On or about May 10, 2006, Callahan submitted to the USPTO an Amendment to Allege Use, in which he claimed that the mark is "now in use in such commerce," and that it was first so used "at least as early as 10/05/2005." As proof of such use, Callahan submitted a copy of an

4

advertisement published in the Park Record, a newspaper published in Park City, Utah, in which he described "Pebble Beach Festivals" as "[a] company organizing all types and kinds of festivals, including but not limited to films, music, art and auctions marketing these forms of media and entertainment in addition to all types and kinds of food & wine," with the address "c/o Glenn Callahan, P.O. Box 1295, Pebble Beach, CA 93953," and with his personal telephone number, (831) 624-1847.

15. On or about August 11, 2006, the mark was approved for registration, and on or about November 11, 2006, Registration No. 3152322 was issued, registering that service mark on the Supplemental Register.

16. PBC is informed and believes that the asserted service mark "Pebble Beach Festivals" has never been used in commerce, whether as represented to the USPTO by Callahan or otherwise, that there is no "company organizing all types and kinds of festivals, including but not limited to films, music, art and auctions marketing these forms of media and entertainment in addition to all types and kinds of food & wine," nor any such "festivals" and that the sole "use" of the mark was the single publication of the referenced advertisement in a newspaper in Park City, Utah.

17. On or about September 30, 2005, Callahan submitted an application to the USPTO to register the service mark "Pebble Beach Homes," representing that he had a bona fide intention to use that mark in commerce for "real estate brokerage services" in international class 36. On or about August 28, 2006, Callahan submitted to the USPTO an Amendment to Allege Use, in which he claimed that the mark is "now in use in such commerce," and that it was first so used "at least as early as 10/05/2005." As proof of such use, Callahan submitted a copy of an advertisement published in the Park Record, a newspaper published in Park City, Utah, in which he described "Pebble Beach Homes" as "[a] company specializing in all types and kinds of real estate brokerage, including but not limited to sales, loans, magazines, financial organizations, bancorps, banks, thrifts, and marketing these forms of media," with the address "c/o Glenn Callahan, P.O. Box 2462, Carmel, CA 93921."

18. On or about September 18, 2006, the mark was approved for registration, and

5

on or about November 1, 2006, Registration No. 3172626 was issued, registering that service mark on the Supplemental Register.

19. PBC is informed and believes that the asserted service mark "Pebble Beach Homes" has never been used in commerce, whether as represented to the USPTO by Callahan or otherwise, that there is no "company specializing in" any type or kind of "real estate brokerage, including but not limited to sales, loans, magazines, financial organizations, bancorps, banks, thrifts," or in "marketing these forms of media," and that the sole "use" of the mark was the single publication of the referenced advertisement in a newspaper in Park City, Utah.

20. On or about July 18, 2006, Callahan submitted an application to the USPTO to register the service mark "Pebble Beach Financial," representing that was using that mark in commerce for "trust services, namely, investment and trust company services" in international class 36. In his application, Callahan represented that the mark was first used in commerce "at least as early as 10/05/2005." As proof of such use, Callahan submitted a copy of an advertisement published in the Park Record, a newspaper published in Park City, Utah, in which he described "Pebble Beach Financial" as "[a] company specializing in all types and kinds of financial brokerage, including but not limited to financial services benefiting bancorps, banks, thrifts and trusts as well as the marketing of this form of financial services," with the address "c/o Glenn Callahan, P.O. Box 2462, Carmel, CA 93921" and with his personal telephone number, (831) 624-1847.

21. On or about August 10, 2007, the mark was approved for registration, and on or about September 18, 2007, Registration No. 3295941 was issued, registering that service mark on the Supplemental Register.

22. PBC is informed and believes that the asserted service mark "Pebble Beach Financial" has never been used in commerce, whether as represented to the USPTO by Callahan or otherwise, that there is no "company specializing in" any type or kind of "financial brokerage, including but not limited to financial services benefiting bancorps, banks, thrifts and trust" or in "marketing of this form of financial services," and that the sole "use" of the mark was the single publication of the referenced advertisement in a newspaper in Park City, Utah.

23. On or about July 5, 2005, Callahan registered the domain names "www.pebblebeachfilmfestival.com" and "www.pebblebeachmusicfestival.com," and on or about September 6, 2005, registered the domain name "www.pebblebeachfestivals.com." There is no active web site at any of those uniform resource locators.

24. On or about July 26, 2008, Callahan registered the domain names "www.pebblebeachfinancial.com" and "www.pebblebeachbancorp.com." There is no active web site at either of those uniform resource locators.

25. On January 30, 2008, Callahan communicated in writing with PBC and offered to sell it the four service mark registrations, one unnamed registration, and associated domain names for the total sum of $185,000.

## FIRST CAUSE OF ACTION

### (Injunctive Relief and Cancellation of "Pebble Beach Bancorp" Registration)

26. PBC incorporates herein by reference as though set forth in full each and every allegation contained in paragraphs 1-25, inclusive.

27. Callahan's statements of fact to the USPTO regarding his alleged use of the "Pebble Beach Bancorp" mark in commerce were false, and made with the intention of obtaining a registration to which Callahan was not, and is not, entitled under the law. The resulting registration therefore was obtained fraudulently within the meaning of 15 U.S.C. § 1064(3).

28. If the fraudulently-obtained registration is permitted to remain, PBC will be injured and damaged in that consumers will be confused as to the source of goods or services that may later be offered under that mark, and the distinctive and well-known "Pebble Beach" marks will be diluted.

29. PBC has no adequate remedy at law and therefore is entitled to injunctive relief against Callahan, restraining and enjoining him and all those acting in concert or participation with him from any use of the "Pebble Beach Bancorp" mark.

30. In addition, this Court should order the cancellation of the "Pebble Beach Bancorp" mark in accordance with the provisions of 15 U.S.C. § 1119.

31. Because under the facts alleged herein Callahan's obvious intent was to trade on the value of the name "Pebble Beach" to the detriment of PBC, and because his conduct was fraudulent, intentional and knowing, this action is an "exceptional case" within the meaning of 15 U.S.C. § 1125(a), and PBC is entitled to an award of reasonable attorney's fees.

## SECOND CAUSE OF ACTION

### (Injunctive Relief and Cancellation of "Pebble Beach Festivals" Registration)

32. PBC incorporates herein by reference as though set forth in full each and every allegation contained in paragraphs 1-25, inclusive.

33. Callahan's statements of fact to the USPTO regarding his alleged use of the "Pebble Beach Festivals" mark in commerce were false, and made with the intention of obtaining a registration to which Callahan was not, and is not, entitled under the law. The resulting registration therefore was obtained fraudulently within the meaning of 15 U.S.C. § 1064(3).

34. If the fraudulently-obtained registration is permitted to remain, PBC will be injured and damaged in that consumers will be confused as to the source of goods or services that may later be offered under that mark, and the distinctive and well-known "Pebble Beach" marks will be diluted.

35. PBC has no adequate remedy at law and therefore is entitled to injunctive relief against Callahan, restraining and enjoining him and all those acting in concert or participation with him from any use of the "Pebble Beach Festivals" mark.

36. In addition, this Court should order the cancellation of the "Pebble Beach Festivals" mark in accordance with the provisions of 15 U.S.C. § 1119.

37. Because under the facts alleged herein Callahan's obvious intent was to trade on the value of the name "Pebble Beach" to the detriment of PBC, and because his conduct was fraudulent, intentional and knowing, this action is an "exceptional case" within the meaning of 15 U.S.C. § 1125(a), and PBC is entitled to an award of reasonable attorney's fees.

## THIRD CAUSE OF ACTION

### (Injunctive Relief and Cancellation of "Pebble Beach Homes" Registration)

COMPLAINT FOR CANCELLATION OF SERVICE MARK REGISTRATIONS, TRANSFER OF DOMAIN NAME REGISTRATIONS, AND MONETARY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

38. PBC incorporates herein by reference as though set forth in full each and every allegation contained in paragraphs 1-25, inclusive.

39. Callahan's statements of fact to the USPTO regarding his alleged use of the "Pebble Beach Homes" mark in commerce were false, and made with the intention of obtaining a registration to which Callahan was not, and is not, entitled under the law. The resulting registration therefore was obtained fraudulently within the meaning of 15 U.S.C. § 1064(3).

40. If the fraudulently-obtained registration is permitted to remain, PBC will be injured and damaged in that consumers will be confused as to the source of goods or services that may later be offered under that mark, and the distinctive and well-known "Pebble Beach" marks will be diluted.

41. PBC has no adequate remedy at law and therefore is entitled to injunctive relief against Callahan, restraining and enjoining him and all those acting in concert or participation with him from any use of the "Pebble Beach Homes" mark.

42. In addition, this Court should order the cancellation of the "Pebble Beach Homes" mark in accordance with the provisions of 15 U.S.C. § 1119.

43. Because under the facts alleged herein Callahan's obvious intent was to trade on the value of the name "Pebble Beach" to the detriment of PBC, and because his conduct was fraudulent, intentional and knowing, this action is an "exceptional case" within the meaning of 15 U.S.C. § 1125(a), and PBC is entitled to an award of reasonable attorney's fees.

## FOURTH CAUSE OF ACTION

### (Injunctive Relief and Cancellation of "Pebble Beach Financial" Registration)

44. PBC incorporates herein by reference as though set forth in full each and every allegation contained in paragraphs 1-25, inclusive.

45. Callahan's statements of fact to the USPTO regarding his alleged use of the "Pebble Beach Financial" mark in commerce were false, and made with the intention of obtaining a registration to which Callahan was not, and is not, entitled under the law. The resulting registration therefore was obtained fraudulently within the meaning of 15 U.S.C. § 1064(3).

9

46. If the fraudulently-obtained registration is permitted to remain, PBC will be injured and damaged in that consumers will be confused as to the source of goods or services that may later be offered under that mark, and the distinctive and well-known "Pebble Beach" marks will be diluted.

47. PBC has no adequate remedy at law and therefore is entitled to injunctive relief against Callahan, restraining and enjoining him and all those acting in concert or participation with him from any use of the "Pebble Beach Financial" mark.

48. In addition, this Court should order the cancellation of the "Pebble Beach Financial" mark in accordance with the provisions of 15 U.S.C. § 1119.

49. Because under the facts alleged herein Callahan's obvious intent was to trade on the value of the name "Pebble Beach" to the detriment of PBC, and because his conduct was fraudulent, intentional and knowing, this action is an "exceptional case" within the meaning of 15 U.S.C. § 1125(a), and PBC is entitled to an award of reasonable attorney's fees.

## FIFTH CAUSE OF ACTION

### (Cybersquatting)

50. PBC incorporates herein by reference as though set forth in full each and every allegation contained in paragraphs 1-25, inclusive.

51. Callahan registered the domain names "www.pebblebeachfilmfestival.com," "www.pebblebeachmusicfestival.com," "www.pebblebeachfestivals.com," "www.pebblebeachfinancial.com," and "www.pebblebeachbancorp.com" in bad faith. His clear intent was to trade upon or threaten to trade upon the famous and distinctive "Pebble Beach" marks and to extort funds from PBC to prevent him from causing damage to and the dilution of its famous and distinctive marks.

52. Because of Callahan's bad faith in registering the domain names set forth herein, and in accordance with the provisions of 15 U.S.C. § 1125 (d)(2)(c), this Court should order the transfer of the registration of each of the domain names listed herein, and any other domain name registered by Callahan and using the name "Pebble Beach," to PBC.

COMPLAINT FOR CANCELLATION OF SERVICE MARK REGISTRATIONS, TRANSFER OF DOMAIN NAME REGISTRATIONS, AND MONETARY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

53. Because of Callahan's violation of the provisions of 15 U.S.C. § 1125(d)(1), and in accordance with the provisions of 15 U.S.C. § 1117(d), PBC is entitled to an award of statutory damages in the sum of $1,000 to $100,000 for each of the domain names at issue in this action.

54. Because under the facts alleged herein Callahan's obvious intent was to trade on the value of the name "Pebble Beach" to the detriment of PBC, and because his conduct was fraudulent, intentional and knowing, this action is an "exceptional case" within the meaning of 15 U.S.C. § 1125(a), and PBC is entitled to an award of reasonable attorney's fees.

WHEREFORE, plaintiff Pebble Beach Company prays for judgment against defendant Glenn R. Callahan as follows:

1. For an injunction, enjoining and restraining Callahan and all those acting in concert and participation with him from using the marks "Pebble Beach Bancorp," "Pebble Beach Festivals," "Pebble Beach Homes," "Pebble Beach Financial," or any other mark incorporating the words "Pebble Beach" or other words confusingly similar thereto;

2. For an Order cancelling the USPTO registration of the "Pebble Beach Bancorp" service mark;

3. For an Order cancelling the USPTO registration of the "Pebble Beach Festivals" service mark;

4. For an Order cancelling the USPTO registration of the "Pebble Beach Homes" service mark;

5. For an Order cancelling the USPTO registration of the "Pebble Beach Financial" service mark;

6. For an Order transferring the registration of the www.pebblebeachfilmfestival.com," "www.pebblebeachmusicfestival.com," "www.pebblebeachfestivals.com," "www.pebblebeachfinancial.com," and "www.pebblebeachbancorp.com" domain names listed herein, and any other domain name registered by Callahan and using the name "Pebble Beach," to Pebble Beach Company;

11

7. For statutory damages for cybersquatting in the sum of $1,000 to $100,000 for each domain name registered in bad faith;

8. For costs of suit incurred herein, including reasonable attorney's fees; and

9. For such other and further relief as this Court may deem just and proper.

Dated: June 10, 2008

NEIL L. SHAPIRO
LAW OFFICES OF NEIL L. SHAPIRO

By _____
Attorneys for Plaintiff
PEBBLE BEACH COMPANY

## DEMAND FOR JURY TRIAL

Plaintiff Pebble Beach Company hereby demands a jury trial of this action.

Dated: June 10, 2008

NEIL L. SHAPIRO
LAW OFFICES OF NEIL L. SHAPIRO

By _____
Attorneys for Plaintiff
PEBBLE BEACH COMPANY

COMPLAINT FOR CANCELLATION OF SERVICE MARK REGISTRATIONS, TRANSFER OF DOMAIN NAME REGISTRATIONS, AND MONETARY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Pebble Beach Company

## DEFENDANTS
Glenn R. Callahan

**(b)** County of Residence of First Listed Plaintiff: Monterey
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Offices of Neil L. Shapiro
2100 Garden Road, Suite C
Monterey, CA 93940
831-372-3700

Attorneys (If Known)

E-FILING  ADR  C08 02920 HRL

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury— Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury — Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | PROPERTY RIGHTS | 450 Commerce |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine | PERSONAL PROPERTY | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | [X] 840 Trademark | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | | 490 Cable/Sat TV |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | 810 Selective Service |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 850 Securities/Commodities/Exchange |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| 196 Franchise | | PRISONER PETITIONS | 730 Labor/Mgmt.Reporting & Disclosure Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | 510 Motions to Vacate Sentence | 740 Railway Labor Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | Habeas Corpus: | 790 Other Labor Litigation | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| 220 Foreclosure | 442 Employment | 530 General | 791 Empl. Ret. Inc. Security Act | | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 535 Death Penalty | | FEDERAL TAX SUITS | 894 Energy Allocation Act |
| 240 Torts to Land | 444 Welfare | 540 Mandamus & Other | IMMIGRATION | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 550 Civil Rights | 462 Naturalization Application | 871 IRS—Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | 555 Prison Condition | 463 Habeas Corpus – Alien Detainee | | 950 Constitutionality of State Statutes |
| | 440 Other Civil Rights | | 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. sections 1064, 1119 and 1125

Brief description of cause:
Cancellation of service mark registrations; transfer of domain names.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE: June 10, 2008

SIGNATURE OF ATTORNEY OF RECORD: [signature]